**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

THE GEO GROUP, Inc.

Plaintiff,

v.

HINTON ECONOMIC DEVELOPMENT AUTHORITY, a Public Trust, and THE TOWN OF HINTON, OKLAHOMA,

Defendants/Counterclaimants.

Case No. CIV-23-1014 G

**ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM**

The Hinton Economic Development Authority (HEDA), an Oklahoma public trust, and the Town of Hinton, Oklahoma, HEDA's sole beneficiary, answers the Complaint for Declaratory Judgment as follows:

1. Defendants admit the statement in Paragraph 1 of the Complaint.

2. Defendants admit the statement in Paragraph 2 of the Complaint.

3. Defendants admit the statement in Paragraph 3 of the Complaint.

4. Defendants admit the statement in Paragraph 4 of the Complaint.

5. Defendants admit the statement in Paragraph 5 of the Complaint.

6. Defendants admit the statement in Paragraph 6 of the Complaint.

7. Defendants admit the statement in Paragraph 7 of the Complaint, subject to the fact that the terms of the Lease Agreement speak for themselves and must be interpreted and applied according to applicable legal principles. A true and correct copy of the Lease

Agreement is attached as ”Exhibit 1.” Defendants deny any and all remaining allegations set forth in Paragraph 7 of the Complaint.

8. Defendants deny the allegations made in Paragraph 8 of the Complaint.

9. Regarding Complaint Paragraph 9, Defendants deny that GEO Group is the Lessee under the Lease Agreement. Further, the Lease Agreement speaks for itself and its terms must be interpreted and applied according to applicable legal principles. Defendants deny any and all remaining allegations set forth in Paragraph 9 of the Complaint.

10. Defendants deny the allegations made in Paragraph 10 of the Complaint.

11. Defendants deny the allegations made in Paragraph 11 of the Complaint.

12. Regarding the allegations set out in Paragraph 12, Defendants admit HEDA was party to the *Intergovernmental and Private Prison Contractor Agreement* dated as of March 1, 2000 (the “Prison Contract”). The Prison Contract speaks for itself; its terms must be interpreted and applied according to applicable legal principles. A copy of the Prison Contract is attached as “Exhibit 2.” Defendants deny any and all remaining allegations set forth in Paragraph 12 of the Complaint.

13. Regarding Paragraph 13, Defendants admit, upon information and belief, that GEO Group is the successor in interest to Cornell Corrections and acquired Cornell Corrections’ interest under the terms of the Prison Contract. Concerning the remaining allegations of Paragraph 13, the Prison Contract speaks for itself; its terms must be interpreted and applied according to applicable legal principles. Defendants deny any and all remaining allegations set forth in Paragraph 13 of the Complaint.

14. Defendants deny the characterization of the Prison Contract's language in Paragraph 14 is accurate. The Prison Contract speaks for itself; its terms must be interpreted and applied according to applicable legal principles. Defendants deny any and all remaining allegations set forth in Paragraph 14 of the Complaint.

15. In answer to the statements in Paragraph 15, Defendants state the Prison Contract speaks for itself; its terms must be interpreted and applied according to applicable legal principles. Defendants deny any and all remaining allegations set forth in Paragraph 15 of the Complaint.

16. Defendants deny the statement in Paragraph 16.

17. Defendants deny the allegations set forth in Paragraph 17, except that Defendants admit the Oklahoma Department of Corrections began housing inmates in the Facility in 2023 and continues to do so. Defendants deny any and all remaining allegations set forth in Paragraph 17 of the Complaint.

18. Concerning Paragraph 18, Defendants admit HEDA has invoiced GEO for the payments due according to the contracts and GEO has not paid HEDA as required. Defendants deny the remainder of the claims and allegations set forth in Paragraph 18 of the Complaint.

19. Defendants admit HEDA has invoiced GEO for payments pursuant to the applicable contracts and that GEO has failed and refused to remit payment as required. The remainder of the statements in Paragraph 19 are legal conclusions and arguments to which no response is required.

**DEFENSES**

1. Plaintiff lacks standing to prosecute the allegations of the Complaint.

2. Plaintiff is not the real party in interest.

3. Prior to the Oklahoma Department of Corrections' execution of the contract related to the Facility, Plaintiff purported to engage in good faith discussions and negotiations with HEDA. Plaintiff represented, and HEDA believed, that Plaintiff would honor the Prison Contract consistent with the Parties' prior course of conduct by making prisoner per diem payments to HEDA. Plaintiff has waived any right to claim that the Prison Contract is not applicable under the present circumstance.

4. Plaintiff is estopped from claiming that the Prison Contract is not applicable under the present circumstances.

5. Plaintiff initiated discussions with HEDA and engaged in the conduct outlined in paragraph 3 above in response to HEDA's inquiries to Plaintiff regarding the status of negotiations with the Department of Corrections and in response to HEDA's requests for details regarding the terms being negotiated. Plaintiff deliberately and fraudulently misled Defendants and induced Defendants to refrain from directly contacting the Department of Corrections and thereby discovering Plaintiff's scheme prior to the execution of the contract by the Department of Corrections.

6. Based on Plaintiff's allegations, Plaintiff's use of the HEDA-owned facility lacks public purpose. The Lease and Prison Contract are therefore void.

7. Based on Plaintiff's allegations and Plaintiff's interpretation of the agreements, the agreements are not supported by valid consideration. The Lease and Prison Contract are therefore void.

**COUNTERCLAIM**

The Hinton Economic Development Authority (HEDA), an Oklahoma public trust, and the Town of Hinton, Oklahoma, HEDA's sole beneficiary, in support of their counterclaim application for construction of certain written instruments pertaining to the Trust, state:

**PARTIES, JURISDICTION AND VENUE**

1. This is an action for construction of the provisions of certain trust instruments, the determination of the existence or nonexistence of certain facts affecting the administration of the trust estate and the law applicable thereto, and the powers, duties, and liabilities of the trust, pursuant to 60 O.S.§ 175.23.

2. HEDA is a public trust created pursuant to 60 O.S. §§ 176 through 180.4, on June 29, 1987, as shown by the Trust Indenture on file with the Oklahoma Secretary of State, "Exhibit 3".

3. The sole beneficiary of the HEDA Trust is the Town of Hinton, Oklahoma.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, because this counterclaim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-five Thousand Dollars ($75.000.00) exclusive of interest and costs and the action is between citizens of different states.

6. Venue in the Western District of Oklahoma is proper pursuant to 28 U.S.C. §1391(b) and (d) and 60 O.S. §175.23 (A) and (B).

**FACTS**

7. Pursuant to the broad grant of authority under Article IV of the Trust Indenture, HEDA is the owner of the "Great Plains Correctional Facility" ("Facility"), a medium security adult prison, built on HEDA-owned land in Hinton, Caddo County, Oklahoma.

8. In late 1999 and early 2000, HEDA entered into a "Lease Agreement" ("Lease"), "Exhibit 1", and "Intergovernmental and Private Prison Contractor Agreement" ("Prison Contract"), "Exhibit 2", with Cornell Corrections of Oklahoma, Inc., ("Cornell") for the Facility.

9. According to Article II of the Prison Contract, the Facility was established by the Town pursuant to the Town's governmental functions and the Town designated Cornell as the exclusive contractor to manage, maintain, and operate the Facility.

10. The initial Lease term was 75 years with an option to extend for an additional 75 years.

11. Article III of the Lease also provides for Cornell's payment to HEDA of annual "Base Rent" in the amount of $100,000 and "Additional Rent" based on an increase

in the "Inmate Contract Per Diem" rate as defined in the Prison Contract. The Lease includes a formula for determining the Additional Rent.

12. Section 3.1 of the Prison Contract grants to Cornell "the sole and exclusive authority and duty to, at its expense, equip, maintain and operate the business affairs associated with the Facility."

13. Section 3.4 of the Prison Contract imposes certain duties on Cornell, including:

> Cornell shall perform or supervise the operation and management of the Facility and the performance of its obligations pursuant to [the Prison Contract] so as to use its best efforts to cause the Facility to best achieve its performance goals. . . . Cornell shall at all times operate and manage the Facility in good faith and with no less care and effort than is customary for it in providing services to other similar facilities owned or operated by it. . . . Cornell shall be responsible for licensing or permitting of the Facility to permit it to be occupied. . . .

14. Section 3.6 of the Prison Contract additionally grants to Cornell "authority to prepare and execute all contracts for the design, construction, equipping, managing, maintaining, operating, or any sale or other disposition, of all or any part of the Facility, including, without limitation, the continuance or general operations of Facility and the housing and medical care of inmates and the transportation of inmates to the Facility."

15. Section 3.9 of the Prison Contract imposes on Cornell

> the responsibility . . . to confine and supervise all Inmates assigned to the Facility and to provide safe and humane care and treatment, in accordance with ACA Standards, including the furnishing of subsistence, routine and emergency medical care, training and treatment programs. . . .

16. Section 3.10 of the Prison Contract addresses the administration of the Facility and requires Cornell to "enter into all agreements and understandings which are

normal, routine and reasonable for the general operations of the Facility under its own corporate identity, unless otherwise specified" in the Prison Contract.

17. Cornell is also required to employ fully trained and uniformly dressed staff to provide 24-hours per day, seven days per week correctional services for the Facility.

18. The authority granted to Cornell by the contracts is limited by a "Reservation of Power and Authority to the Town" in Section 3.2, which retains for the Town "all decision making powers and authority over all Inmate Contracts it enters into. . . . The Town shall have the ultimate and sole decision making authority to negotiate contractual terms and conditions of confinement with regard to said Inmate Contracts."

19. Section 4.1 of the Prison Contract provides for the payment of a "Base Management Fee" by HEDA to Cornell based on a formula set forth in section 4.3. Per Section 4.1, Cornell is entitled to receive "an amount equal to the Base Per Diem Rate multiplied by the number of Inmate Days less the amounts reserved to [HEDA] in Section 4.3 herein. The Base per Diem rate under any Inmate Contract shall be sufficient to reimburse Cornell for all costs incurred by Cornell in connection with such Inmate Contract and to provide Cornell with a reasonable pre-tax rate of return on Cornell's investment of at least 15% per annum."

20. According to Article I of the Prison Contract, an "Inmate Contract" is a contract between the Town and/or Cornell and any governmental entity that has sentenced the Inmate to a prison term and contracted with the Town and/or Cornell for the Inmate's housing and care in the Facility which describes the rights and obligations of the parties relative to the housing and care of inmates at the Facility.

21. The “Base Management Fee” authorized by Section 4.1 is subject to a reservation to HEDA per Section 4.3 in “the sum of One Dollar ($1.00) per diem for each Inmate at any time housed in the facility” (the “Inmate Per Diem”). The Inmate Per Diem is to be increased if the “Inmate Contract Per Diem is raised above $43.95,” up to a maximum Inmate Per Diem of $1.25.

22. Although the Prison Contract contemplates payments from contracting entities being made to HEDA and subsequent payment from HEDA to Cornell per Sections 4.1 and 4.3, Cornell and its successors have received direct payments from contracting entities, and they in turn remitted payment of reserved Inmate Per Diem to HEDA.

23. Cornell assigned the Lease to Municipal Corrections Finance, L.P. (“MCF”) on August 14, 2001.

24. The GEO Group, Inc. (“GEO”) acquired Cornell in 2010.

25. On April 18, 2023, GEO/MCF purported to enter into a 66 month Sublease of the Facility with the Oklahoma Department of Corrections (“ODOC”), “Exhibit 4”.

26. This Sublease provides for the housing of prisoners in the custody of ODOC at the Facility.

27. According to the Sublease, ODOC is solely responsible for the operation of the Facility.

28. HEDA did not negotiate or consent to GEO/MCF’s sublease of the Facility.

29. Contrary to the express terms of the Lease and Prison Contract, the Sublease makes no provision for HEDA to receive Inmate Per Diem and rent.

30. HEDA has made demand upon GEO/MCF for monthly payment of the Inmate Per Diem but GEO/MCF refuses to make the payments to HEDA required by the agreements.

31. By their actions, GEO/MCF have deprived the citizens of the Town of Hinton and Caddo County of the economic benefits that formed the basis and the public purpose for the construction and continued operation of the Facility.

32. The recitals in the HEDA Trust Indenture unequivocally state that the Trust was formed to enhance the ability of the Town of Hinton to provide for "future economic growth and development," and "generally promote…economic welfare and prosperity." The Indenture vests HEDA with broad powers to achieve these ends.

33. Under 60 O.S. § 175.23, HEDA and the Town of Hinton have the right to invoke this Court's authority to construe the provisions of the Trust Indenture, Lease, Prison Contract, and all documents and transactions involving HEDA, GEO/MCF, and ODOC related thereto, and to determine the applicable law and facts affecting the administration of the trust estate.

**PRAYER FOR RELIEF**

WHEREFORE, HEDA and the Town of Hinton pray the Court enter judgment construing the Trust Indenture, Lease, Prison Contract, and all related documents and transactions, and:

A. Ruling the Lease and Prison Contract constitute a single, non-severable agreement; and

B. Requiring GEO/MCF pay HEDA a monthly Inmate Per Diem in the amount of $1.25 per inmate per day in accordance with the Prison Contract, in addition to all payments required under the Lease; and/or

C. Ruling that GEO/MCF was not authorized to sublease the Facility to the State of Oklahoma while failing to perform its duties under the Prison Contract and the sublease executed by GEO/MCF and the State of Oklahoma is therefore void and of no effect; and/or

D. Determining that GEO/MCF breached the terms of the agreements with HEDA and the Town of Hinton when it subleased the Facility without complying with its obligations under the Prison Contract and that HEDA and the Town are therefore entitled to terminate the Lease and Prison Contract; and/or

E. Determining the Lease and Prison Contract are illusory and/or void as against public policy and are therefore of no force and effect; and/or

F. Determining the Lease and Prison Contract, as interpreted and applied by GEO/MCF, serve no public purpose and are therefore void and of no force and effect; and

G. Denying Plaintiff's request for declaratory judgment and granting the relief requested by Defendants/Counterclaimants; and

H. Entering judgment for such additional relief as is appropriate under the circumstances.

Respectfully submitted,

s/Andrew W. Lester
Andrew W. Lester, OBA No. 5388
John E. Dorman, OBA No. 11289
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
Email: alester@spencerfane.com
jdorman@spencerfane.com

AND

s/Kimberlee T. Spady
Kimberlee T. Spady, OBA No. 15660
114 E. Main Street
P.O. Box 433
Hinton, Oklahoma 73047
(405)542-6056
Kim@Spadylaw.com

**ATTORNEYS FOR DEFENDANTS AND COUNTERCLAIMANTS THE HINTON ECONOMIC DEVELOPMENT AUTHORITY and THE TOWN OF HINTON, OKLAHOMA**

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to all counsel of record including:

Randall J. Wood rwood@piercecouch.com
Robert S. Lafferrandre rlafferrandre@piercecouch.com

s/Andrew W. Lester